UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JARDYN TRUETT** | : | **CIVIL ACTION NO. 2:18-cv-0550** |
| **VERSUS** | : | **UNASSIGNED DISTRICT JUDGE** |
| **FLUOR SCAFFOLDING INC., ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Remand [doc. 12] filed by plaintiff Jardyn Truett and opposed [doc. 23] by defendants Technip USA, Inc. ("Technip") and Fluor Enterprises, Inc. ("Fluor") (collectively, "FTI").[1] The matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

**I.**
**BACKGROUND**

This matter arises from a wrongful death and survival action filed in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, on March 15, 2018, by Louisiana resident Jardyn Truett ("plaintiff"). Doc. 1, att. 1. Plaintiff seeks damages from FTI and several other defendants based on the death of her husband, Tyler Truett. Tyler Truett died after he allegedly fell from scaffolding while working as a welder for Performance Contracting Services, Inc., at the Sasol ethane cracker facility in Westlake, Louisiana. *Id.* at p. 4, ¶ III. In her state court petition, plaintiff alleged that the twelve defendants named were liable for the accident based on the negligent

---

[1] Technip and Fluor represent that they are engaged in an unincorporated joint venture under the name Fluor-Technip Integrated. Doc. 23, p. 3.

construction and maintenance of the scaffolding, as well as their failure to observe other safety protocols at the site. *Id.* at pp. 4–5, ¶¶ VI–X.

Defendants Sasol Chemicals USA LLC and Sasol Chemicals North America LLC (collectively, "Sasol") filed a notice of removal to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[2] Doc. 1. There they acknowledge that defendants ISC Constructors, LLC ("ISC") and MMR Constructors, Inc. ("MMR") both have Louisiana citizenship, thus destroying complete diversity in this matter based on plaintiff's Louisiana residency. *Id.* at pp. 7–8. They maintain, however, that ISC and MMR are improperly joined for the purpose of defeating diversity jurisdiction. *Id.* at pp. 7–16. In turn plaintiff filed the instant motion to remand, asserting that she has viable claims against both parties under Louisiana law. Doc. 12; doc. 12, att. 1. Shortly thereafter, she filed a voluntary motion to dismiss all claims against ISC without prejudice, which the court granted. Docs. 22, 27.

## II.
### LAW AND ANALYSIS

#### A. Removal Jurisdiction and Improper Joinder Standards

Any civil action brought in a State court of which the district courts have original jurisdiction may be removed to the proper district court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a)(1). The diversity provisions of § 1332 require complete diversity among the parties. *Caterpillar Inc. v. Lewis*, 117 S.Ct. 467, 472 (1996). The removing party bears the burden of showing that removal was procedurally proper and that federal jurisdiction exists. *See De Aguilar v. Boeing Co.*, 47 F.3d

---

[2] All claims against Sasol were subsequently dismissed without prejudice pursuant to a joint motion. Docs. 15, 19.

1404, 1408 (5th Cir. 1995). "When removal is based on diversity of citizenship, diversity must exist at the time of removal." *Texas Beef Grp. v. Winfrey*, 201 F.3d 680, 686 (5th Cir. 2000).

If removal is based on a claim that a non-diverse party has been improperly joined, then the removing party must establish either "actual fraud in the pleading of jurisdictional facts" or an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). Only the latter method is relevant here, because no fraud is alleged. Thus the relevant question is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* Under this test, the court looks to whether there is "a **reasonable** basis" for predicting that the plaintiff can recover on any of his claims against the non-diverse defendant. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (emphasis added). A "mere theoretical possibility of recovery," on the other hand, "will not preclude a finding of improper joinder." *Smallwood*, 385 F.3d at 573 n. 9.

In order to assess the plaintiff's possibility of recovery against the non-diverse defendant, the court conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant." *Id.* at 573. This inquiry "depends upon and is tied to the factual fit between the [plaintiff's] allegations and the pleaded theory of recovery." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999). All contested issues of substantive fact and ambiguities in the controlling state law must be resolved in the plaintiff's favor. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th

Cir. 1995). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573.

In some cases, however, the analysis should advance past the standards of Rule 12(b)(6). *Id.* This is appropriate where the plaintiff "has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Id.* "In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* The summary inquiry is only appropriate "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant," and should not proceed into a resolution of the merits. *Id.* at 573–74. On a summary inquiry into improper joinder, the court must still resolve all ambiguities in the plaintiff's favor. *Travis*, 326 F.3d at 648–49.

    **B. *Application***

As noted above, a case is only properly removed on the basis of diversity jurisdiction if complete diversity existed at the time of removal. The Supreme Court described removal of a case where, at the time, complete diversity was lacking as both a jurisdictional defect under 28 U.S.C. § 1332 and a statutory flaw under 28 U.S.C. § 1441, which defines the removability of civil actions. *Caterpillar*, 117 S.Ct. at 475. It determined that the jurisdictional defect was cured by subsequent dismissal of the nondiverse defendant and that, due to overriding concerns of "finality, efficiency, and economy," the persistent statutory flaw in removal would not require the appellate court to vacate all proceedings that had followed and reverse a denial of remand. *Caterpillar*, supra, 117 S.Ct. at 476–77. Because the alleged statutory flaw is ripe for review in the instant motion, however, we review it now by considering the improper joinder arguments as to both defendants.

In her complaint the plaintiff alleges that the twelve named defendants are liable in several respects, relating to the construction and maintenance of the scaffolding, failure to institute

protocols to prevent falling debris, and "[a]ny and all other negligent acts and omissions . . . ." Doc. 1, att. 1, pp. 4–5, ¶ VI. She also maintains that "all defendants were responsible for the safety conditions of the worksite and all had stop-work authority and could have corrected the unsafe condition," and that "[a]ll named defendants are vicariously liable" for the acts and omissions of their employees under the doctrine of respondeat superior. *Id.* at p. 5, ¶¶ IX, X. Specific to ISC and MMR, the allegedly improperly joined defendants, she states only that both entities had employees who "were present at the time of the accident and could have remedied the hazardous conditions which led to this fatal accident." *Id.* at p. 2, ¶ I. In the notice of removal and opposition to the motion to remand, Sasol and FTI maintain that plaintiff fails to show that ISC or MMR undertook any obligation to the plaintiff's decedent that would impose liability on them or their employees. Doc. 1, pp. 13–14, ¶ 39; doc. 23, pp. 11–15. Instead, FTI insists, plaintiff only shows a theoretical possibility of recovery, which is insufficient under the improper joinder standards described above to keep the non-diverse defendants in the suit. Doc. 23, pp. 9–11.

A plaintiff's inability to make specific factual allegations against a non-diverse defendant is enough to establish improper joinder. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698–99 (5th Cir. 1999). The complaint in this matter does not provide any clue as to MMR or ISC's specific involvement at the site or the basis for their liability. Accordingly, we pierce the pleadings and look to the evidence provided by the parties in order to determine if MMR and/or ISC was improperly joined.

Sasol offers declarations from ISC site manager J.P. Bray and MMR vice president/project director Ray Gibson. Doc. 1, atts. 5 & 6. In these declarations, Bray and Gibson state that their respective companies were hired by Sasol to perform electrical and instrumentation work at the facility and "had no involvement in the construction, erection, maintenance, control or custody of

the scaffolding structure" from which plaintiff's decedent allegedly fell. Doc. 1, att. 5, p. 2, ¶¶ 6–7; doc. 1, att. 6, p. 2, ¶¶ 7–8. They also maintain that ISC and MMR "had no involvement in institution of any safety protocol or responsibility for safety conditions related to the scaffold platform or work-site and equipment at the Sasol facility pursuant to the Occupational Safety Health Act (OSHA) regulations or otherwise." Doc. 1, att. 5, p. 2, ¶ 8; doc. 1, att. 6, p. 2, ¶ 9. Finally, they aver that plaintiff's decedent was not an ISC or MMR employee and that neither ISC nor MMR knew of the allegedly hazardous conditions where he was working before his death. Doc. 1, att. 5, p. 2, ¶¶ 9–10; doc. 1, att. 6, p. 2, ¶¶ 10–11. Gibson also maintains that, at the time of the accident, MMR employees were not working in the vicinity of the allegedly hazardous scaffolding. Doc. 1, att. 6, p. 2, ¶ 12.

The only new evidence supplied by plaintiff is the investigation record from the Calcasieu Parish Sheriff's Office. *See* doc. 12, att. 3. This record does not refute anything in the ISC or MMR declarations regarding their employees' roles at the facility and in fact does not mention either entity. Instead, plaintiff admits that she was only able to determine that they were "involved in the construction work" at Sasol through internet searches. Doc. 12, att. 1, p. 3. Plaintiff maintains, however, that ISC and MMR's disavowal of responsibility for any safety condition or protocol is a legal conclusion and that their admission to having employees present at the Sasol facility, "at least at one time or another," are sufficient to show a possibility of recovery against those entities.[3] *Id.* at pp. 6–7.

Plaintiff maintains that, based on the discovery available to her, it appears that the accident was caused by improper planking of the scaffolding, in violation of OSHA regulations found at 29

---

[3] In her memorandum she also alleges that ISC and MMR's involvement in electrical and instrumentation work "certainly could have touched on falling debris, improper/faulty safety equipment, improperly planked scaffolding, and the ruin of scaffolding, and other unsafe conditions at the Sasol facility." Doc. 12, att. 1, p. 3. However, she provides nothing to support these assertions.

C.F.R. 1926.451(b)(1)(i). Doc. 12, att. 1, p. 2. She asserts that these regulations were applicable to, and possibly breached by, the MMR and ISC employees at the site where plaintiff's decedent fell. *Id.* at p. 7. Finally, she appears to imply that ISC and/or MMR employees may have been custodians of the scaffolding and are therefore liable under Louisiana Civil Code article 2317.1[4] for the damages it caused. *Id.* at pp. 7–8.

Plaintiff's general allegation that all defendants were responsible for safety conditions at the site is insufficient to support a claim of negligence against any particular party. The evidence provided by Sasol, and unrefuted by plaintiff, shows that ISC and MMR employees had no involvement in the design or maintenance of the scaffolding and no responsibility for any safety protocol that might have prevented the alleged accident. Plaintiff also offers no basis for her assertion in the motion to remand that ISC or MMR employees might have had custody of the scaffolding, and so fails to refute the ISC and MMR declarations on that point. Accordingly, defendants have shown that plaintiff has no possibility of recovery against ISC or MMR based on her allegations that they violated any general standard of care with respect to the scaffolding or any safety protocol at the site.

As for plaintiff's claims relating to a breach of OSHA regulations, 29 U.S.C. § 654(b) provides that "[e]ach employee shall comply with [such regulations] which are applicable to his own actions and conduct." Under Louisiana jurisprudence, a non-employer's violation of an OSHA regulation does not constitute negligence per se though evidence of such a violation may

---

[4] Under Louisiana law:
> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. Civ. Code art. 2317.1.

be admissible as evidence of the defendant's negligence. *Willis v. Noble Drilling (US), Inc.*, 105 So.3d 828, 847–48 (La. Ct. App. 5th Cir. 2012) (Wicker, J., dissenting). Plaintiff, however, fails to provide any specific allegations that would show that OSHA regulations relating to scaffolding or any other alleged factor in the decedent's fall did apply to the ISC and/or MMR employees. Mere presence of the ISC and MMR employees at the site does not show a duty on their part to ensure the proper planking of scaffolding, especially in light of the declarations showing their lack of involvement with the scaffolding and their lack of awareness of any hazards relating to that structure.

Defendants have shown that plaintiff's allegations do not demonstrate a possibility of recovery against ISC or MMR. The two entities are therefore improperly joined and all claims against them should be dismissed.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motion to Remand [doc. 12] be **DENIED** and that all claims against defendant MMR be **DISMISSED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE this 30th day of August, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE

-9-